COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO.
2-01-236-CR
 
JOHNNY DAVID DORSEY       
       
       
       
       
       
       
       
       
 APPELLANT
V.
THE STATE OF TEXAS       
       
       
       
       
       
       
       
       
       
 STATE
------------
FROM CRIMINAL DISTRICT COURT NO.
2 OF TARRANT COUNTY
------------
OPINION
------------
A jury convicted Johnny David
Dorsey, Appellant, of aggravated sexual assault of a child under fourteen years
of age. After the jury assessed Appellant's punishment at 35 years' confinement,
he appealed raising ten points: 1-6) Appellant's trial counsel rendered
ineffective assistance of counsel by failing to investigate, failing to
cross-examine the complainant, failing to cross-examine the complainant's sexual
abuse counselor, failing to object to the investigating detective testifying to
the appearance of truthfulness of the complainant, advising Appellant not to
testify, and failing to object to the testimony of Jennifer Henderson regarding
sexual misconduct of Appellant's son; 7) the trial court erred by refusing to
grant a mistrial when the State improperly argued the opinion of the judge who
signed the warrant for Appellant's arrest; 8) the trial court committed error by
refusing to grant a mistrial when the State misstated the evidence regarding
Appellant's stated feelings toward the complainant during argument; 9) the trial
court committed error by permitting the prosecutor to make an argument that
struck at the appellant over the shoulder of counsel; and 10) the trial court
committed error by permitting the prosecutor to state her personal opinion
during punishment argument. We affirm the trial court's judgment.
FACTS
On October 21, 1999, people at A
L 's (AL) church saw her
kissing a boy four years older than herself in the church parking lot. The
people who witnessed AL's actions reported it to her mother, Jennifer Henderson
(Henderson). When her mother disciplined her for her actions, AL claimed that
she kissed the boy because she feared telling a boy no. AL claimed that her fear
stemmed from sexual abuse she received continuously from the age of two to seven
by her ex-step-dad. She claimed that Appellant had sexually abused her for four
to five years while her mother was married to him. Appellant and Henderson
divorced in 1994. After their divorce, both Henderson and Appellant remarried
different people.
When AL told Henderson, she called
the district attorney's office and brought charges against Appellant. The jury
found Appellant guilty of aggravated sexual assault of a child under 14 years of
age. The jury then assessed punishment at 35 years' confinement.
INEFFECTIVE
ASSISTANCE CLAIMS
In Appellant's first six points on
appeal, he claims that his trial attorney provided ineffective assistance of
counsel. J. Rex Barnett (Barnett) represented Appellant during trial. Because
Appellant's first six points on appeal are based on ineffective assistance of
counsel, we will address all six points together.
Standard
of Review
We apply a two-pronged test to
ineffective assistance of counsel claims. Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that his
counsel's performance was deficient; second, appellant must show the deficient
performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064; Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App.
1999).
In evaluating the effectiveness of
counsel under the first prong, we look to the totality of the representation and
the particular circumstances of each case. Thompson, 9 S.W.3d at 813.
The issue is whether counsel's assistance was reasonable under all the
circumstances and prevailing professional norms at the time of the alleged
error. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. "[C]ounsel
is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment."
Id. at 690, 104 S. Ct. at 2066. An allegation of ineffective assistance
must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at 814. Our
scrutiny of counsel's performance must be highly deferential, and every effort
must be made to eliminate the distorting effects of hindsight. Strickland,
466 U.S. at 689, 104 S. Ct. at 2065.
The second prong of Strickland
requires a showing that counsel's errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial whose result is reliable. Id. at
687, 104 S. Ct. at 2064. In other words, appellant must show there is a
reasonable probability that, but for counsel's unprofessional errors, the result
of the proceeding would have been different. Id. at 694, 104 S. Ct. at
2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our inquiry must
be on the fundamental fairness of the proceeding whose result is being
challenged. Id. at 697, 104 S. Ct. at 2070.
Discussion
In Appellant's first point, he
claims that Barnett's failure to properly investigate the charges in the case
deprived Appellant of effective assistance of counsel. Appellant further
contends in his second and third points on appeal that had Barnett properly
investigated the allegations and the State's witnesses, Appellant could have
effectively cross-examined AL and Debbi Land (Land).
In the hearing on Appellant's
motion for new trial, Barnett testified that he lacked proper funds to
thoroughly investigate any of the State's witnesses. Barnett did review the
offense report, and the prosecutor also gave him access to the State's file, but
Barnett testified that with more money he would have investigated AL and Land
further. He further testified that with the information he had at trial and by
observing the direct examination of both witnesses, he strategically decided not
to cross-examine the two witnesses.
Appellant contends that Barnett had
a duty to reasonably investigate all of the State's witnesses and that a proper
investigation might have yielded information which Barnett could have used to
impeach AL's and Land's testimony. Appellant specifically asserts that his trial
counsel should have interviewed the complainant, her best friend to whom she
claimed to have referred to this abuse years before, complainant's mother and
the mother's best friend, complainant's counselor, the doctor who examined
complainant, or any person with information about the reputation for
truthfulness of any of these witnesses. Appellant claims that by failing to
investigate the witnesses, Barnett's assistance fell below the objective
standard of reasonableness cited in Strickland.
We begin our discussion by noting
that counsel has a duty to make reasonable investigations or to make a
reasonable decision that makes particular investigations unnecessary. Strickland,
466 U.S. at 691, 104 S.Ct. at 2066; McFarland v. State, 928 S.W.2d 482,
501 (Tex. Crim. App. 1996). Counsel is charged with making an independent
investigation of the facts of the case, id., and has the responsibility
to seek out and interview potential witnesses. Ex Parte Welborn, 785
S.W.2d 391, 393 (Tex. Crim. App. 1990). Counsel should not "blindly rely on
the veracity either of his client's version of the facts or witness statements
in the State's file." McFarland, 928 S.W.2d at 501. In the present
case, Barnett did not reasonably investigate the case nor did he base his
decision to not investigate on reasonable grounds. Even with a lack of funds,
Barnett could have and should have attempted to interview the witnesses when
they arrived in town for trial. We hold that through Barnett's failure to
investigate, his assistance at trial fell below the standard of prevailing
professional norms.
Our review does not end here. The
test espoused in Strickland also requires a reasonable probability
that, but for Barnett's failure to investigate, a different result at trial
would have occurred. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
Appellant has failed to come forward with any evidence that Barnett's failure to
investigate affected the result at trial. Appellant has not shown any
information that would have been uncovered with a proper investigation. Instead,
Appellant attempts to say that had Barnett investigated the case properly,
Barnett might have decided to cross-examine AL and Land. We hold that Appellant
has failed to show that the deficient performance prejudiced Appellant's
defense. We overrule Appellant's first point.
As for Appellant's second and third
points, we must first determine whether Barnett committed error in not
cross-examining AL and Land. See Strickland, 466 U.S. at 687, 104 S.Ct.
at 2064. Barnett based his decision to not cross-examine AL in part by the way
AL testified at trial. The record shows that AL gave a very emotional but
detailed description of the assaults. The graphic depiction of the assaults,
added with the age of the victim, would have had a very emotional impact on the
jury.
Appellant claims that AL's
testimony revealed many areas where Barnett might have cross-examined her.
Appellant states that the long time between the abuse and the time when AL
reported the abuse suggested an area of cross-examination. Second AL reported
the abuse only after her mother disciplined her for kissing an older boy. Third,
the very descriptive testimony of AL might lead one to think that someone
coached her. Finally, the terminology that AL used on the stand seemed to be too
mature for her age. Appellant contends that by failing to cross-examine AL on
any ground, the jury would infer that Appellant ratified the truth of the
testimony.
While Appellant points to areas of
possible cross-examination, he ignores the fact that questioning a very
sympathetic witness in these areas holds a large amount of risk. It is the
province of the lawyer to balance this risk versus the possible gain of
cross-examining a witness. Garner v. State, 864 S.W.2d 92, 102 (Tex.
App.--Houston [1st Dist.] 1993, writ ref'd) (Often, the decision to not
cross-examine a witness is the result of the wisdom acquired by experience in
the combat of trial.); see also Coble v. State, 501 S.W.2d 344, 346
(Tex. Crim. App. 1973). While some lawyers would choose to cross-examine AL,
many reasonable lawyers would think the risk too high and choose not to. We
cannot say that Barnett's actions in refusing to cross-examine AL amounted to
deficient performance under Strickland. We overrule Appellant's second
point on appeal.
Appellant's third point focuses on
Barnett's choice to not cross-examine Land. Land worked as a social worker and
counseled AL after she reported the abuse. During direct-examination, she gave a
descriptive account of the emotional abuse suffered by AL. Appellant contends
that Land's testimony filled in gaps left after AL's testimony. Appellant claims
that Land's testimony amounted to an extension of AL's testimony.
Appellant fails to offer any
possible areas of cross-examination that Barnett should have explored with Land.
He merely states that Barnett should have attempted to contradict Land's
testimony so that both she and AL appeared less credible. Because Appellant
either could not or did not show any areas where Barnett might have
cross-examined Land effectively, he has failed to show how Barnett erred in
choosing not to cross-examine her. At the hearing on his motion for new trial,
Appellant states that when Barnett failed to cross-examine Land, his actions
lent credibility to Land's testimony. Appellant failed to call any jury members
to testify to this result. Appellant cites no law for his proposition and offers
no evidence. Appellant has failed to overcome the presumption that Barnett
rendered adequate assistance in this area and made the decision not to
cross-examine Land in the exercise of reasonable professional judgment. Strickland,
466 U.S. at 690, 104 S.Ct. at 2066; Conrad v. State, 77 S.W.3d 424, 425
(Tex. App.--Fort Worth 2002, pet. ref'd). We overrule Appellant's third point on
appeal.
In Appellant's fourth and sixth
points on appeal, he claims that Barnett ineffectively assisted him because
Barnett failed to timely object on two occasions. The first instance occurred
when Barnett failed to object to Detective Thomas Wayne Goodman's (Goodman)
opinion about the complainant's truthfulness. The State asked Goodman "[w]hen
you reviewed the videotape, what was your impression of the girl on the
videotape?" Goodman responded, "That she was being truthful."
Appellant claims that Texas law forbids testimony about the veracity of another
witness. See TEX.
R. EVID.
608(a); Schutz v. State, 957
S.W.2d 52, 69 (Tex. Crim. App. 1997).
The second instance when Barnett failed
to object occurred when the prosecution implied through the testimony of
Henderson and AL that Appellant had taught his son to sexually assault women.
During the direct examination of Henderson, the prosecution asked her about
Appellant's son. The prosecutor asked, "[w]hen did you first become aware
that A
had sexually assaulted your daughter?" Henderson replied that she
had caught the two children in AL's closet, but did not know what occurred until
AL told her on the same day AL told her about Appellant's abuse. The prosecutor
broached this subject again when he questioned AL. The prosecutor asked,
"Sometimes did A
touch you also in ways you didn't like?" AL responded, "Yes,
ma'am." The prosecutor then asked, "Do you recall specifically where
he learned that conduct from?" AL then stated, "He never told me where
he learned it from." Appellant claims that this line of questioning
inferred that Appellant had taught his son how to abuse AL. Appellant claims
that this inference prejudiced his case, and Barnett should have objected to
these questions.
Appellant has shown instances in the
record where Barnett could have objected. He has stated that the failure to
object at these times prejudiced his case, but he has not given any reasons for
Barnett's failure. During the motion for new trial hearing, Appellant had the
opportunity to question Barnett over the lack of objections, but he failed to
ask any questions concerning them. Appellant instead has chosen to bring a
record before this court that shows absolutely no explanation for Barnett's
actions, and then ask us to declare that Barnett's actions so prejudiced
Appellant's trial that we must order a new one.
The Texas Court of Criminal Appeals has
clearly ruled that when a defendant argues that his trial counsel's actions
amounted to ineffective assistance, he must bring a complete record to the
appellate court showing not only the omissions but also the reasons for the
omissions. If counsel's reasons for his conduct do not appear in the record and
the possibility exists that the conduct could have been legitimate trial
strategy, we must defer to counsel's decisions and deny relief on an ineffective
assistance claim on direct appeal. Ortiz
v. State, 93 S.W.3d 79, (Tex. Crim. App. 2002);
Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Thompson,
9 S.W.3d at 813-14.
In this case, the reason that Barnett did
not object to Goodman's testimony could have been due to the brevity of the
testimony and the hope that the jury might have overlooked it. If Barnett had
objected, it would have highlighted the negative testimony to the jury. In the
second case where the prosecutor implied that Appellant had taught his son to
molest AL, perhaps Barnett wanted the testimony admitted to show how AL could
know and describe the assaults in such detail without Appellant having assaulted
her. In any case, this court does not have to guess what Barnett's reasons might
or might not have been. We only need to find one possible legitimate reason for
Barnett not to object. We have done so, and we overrule Appellant's fourth and
sixth points on appeal.
In Appellant's fifth point on appeal, he
claims that Barnett's assistance was ineffective because Barnett advised
Appellant not to testify in the guilt/innocence stage of the trial. Barnett
testified at the new trial hearing that he believed the jury would not convict
Appellant because of contradicted testimony at trial. Barnett, therefore, felt
that any testimony by Appellant would not help the case and might harm it.
Barnett advised Appellant not to testify, and Appellant decided to follow this
advice. After the jury returned a guilty verdict, Appellant did testify in the
punishment stage of the trial where, during cross-examination, the prosecution
impeached Appellant's testimony. The prosecution caught Appellant in a lie and
then used this lie in closing arguments.
Again, Appellant failed to fully develop
a record showing Barnett's reasons for advising Appellant not to testify.
Perhaps Barnett was concerned that the same type of impeachment which occurred
during Appellant's testimony in the punishment stage would have occurred during
the guilt/innocence stage of the trial had Appellant testified. Perhaps Barnett
feared opening the door to Appellant's prior bad acts. See
Cagle v. State, 23 S.W.3d 590, 592 (Tex. App.--Fort Worth 2000, no pet.)
(The general rule is that if a defendant exercises his right to testify he is
subject to the same rules governing examination and cross-examination as any
other witness.). "[H]e may be contradicted, impeached, discredited,
attacked, sustained, bolstered, [and] made to give evidence against
himself." Kos v. State,
15 S.W.3d 633, 642 (Tex. App.--Dallas 2000, pet. ref'd). Barnett was justifiably
concerned that a cross-examination of Appellant would be damaging to the case,
and his advice to Appellant was sound trial strategy. Finally, we note that
Appellant made the ultimate decision not to testify, and we will not alleviate
the repercussion of that decision by refocusing the blame on to his trial
counsel. We overrule Appellant's fifth point.
APPELLANT'S POINTS SEVEN
AND EIGHT
In Appellant's seventh and eighth points
on appeal, he claims that the trial court should have granted a motion for
mistrial on two separate statements made by the State during closing argument.
In Appellant's seventh point, he argued that the trial court committed error by
refusing to grant a mistrial when the State argued the personal opinion of the
judge who signed the warrant for Appellant's arrest. During the State's rebuttal
to Appellant's closing argument, the prosecution stated that the defense falsely
claimed that everyone but AL thought that Appellant was an upstanding
individual, "because the Judge that signed his arrest warrant didn't
believe him to be a perfect father and an upstanding father individual."
Appellant objected, and the trial court sustained the objection. Appellant then
asked for a motion to disregard, which the trial court granted. Appellant asked
for a mistrial, but the trial court denied this request.
In Appellant's eighth point on appeal, he
argued that the trial court erred by refusing to grant a mistrial when the
prosecution misstated evidence regarding Appellant's feelings toward AL. During
the State's final arguments, the prosecutor stated that "[a]nd you know,
when he testified you had a chance to look at his demeanor and it was pretty
cavalier. I didn't do it. I loved her like a wife. Isn't that a statement?"
At this point Appellant objected saying that the argument misstated the
evidence. The trial judge sustained the objection and gave an instruction to
disregard. Appellant again requested a mistrial, and again the trial judge
denied the request. Because both of Appellant's points deal with alleged
prosecutorial misconduct during final argument, we will review the two points
together.
Standard
of Review
To be permissible, the State's jury
argument must fall within one of the following four general areas: (1) summation
of the evidence; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; or (4) plea for law enforcement. Felder
v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert.
denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
When the trial court sustains an
objection and instructs the jury to disregard but denies a defendant's motion
for a mistrial, the issue is whether the trial court erred in denying the
mistrial. Faulkner v. State,
940 S.W.2d 308, 312 (Tex. App.--Fort Worth 1997, pet. ref'd) (en banc op. on
reh'g). Its resolution depends on whether the court's instruction to disregard
cured any prejudicial effect. Id.
Generally, an instruction to disregard impermissible argument cures the
prejudicial effect, if any. Id.;
Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App.), cert.
denied, 516 U.S. 832 (1995). In assessing the curative effect of the
court's instruction to disregard, the correct inquiry is whether the argument
was extreme, manifestly improper, injected new and harmful facts into the case,
or violated a mandatory statutory provision and was thus so inflammatory that an
instruction to disregard could not cure its prejudicial effect. Hernandez
v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991), cert.
denied, 504 U.S. 974 (1992); Faulkner,
940 S.W.2d at 312. If the instruction cured any harm caused by the improper
argument, a reviewing court should find that the trial court did not err. Dinkins,
894 S.W.2d at 357; Faulkner,
940 S.W.2d at 312. Only if the reviewing court determines the instruction was
ineffective does the court go on to determine whether, in light of the record as
a whole, the argument had a substantial and injurious effect or influence on the
jury's verdict. Tex. R. App. P. 44.2(b).
Discussion
In Appellant's seventh point, he claims
that the State argued facts outside of the record, and that the State's argument
was equal to a judge commenting on Appellant's guilt or innocence. Appellant
claims that when the jury heard the argument, they could not distinguish between
the trial judge and the judge who signed the warrant so the jury treated the
comment as coming from the trial judge. We hold that the argument made was
outside of the record and improper.
It has long been established that a
prosecutor cannot use closing argument to place matters before the jury that are
outside the record and prejudicial to the accused. Everett
v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986) (en banc). Here, the
record did not contain the personal views of the judge who signed the arrest
warrant, and no reasonable inference would allow the State to make this
argument. The trial judge properly sustained the objection and properly
instructed the jury to disregard.
We note that the granting of a mistrial
should be an "exceedingly uncommon remedy." Jackson
v. State, 50 S.W.3d 579, 588 (Tex. App.--Fort Worth 2001, pet. ref'd)
(citing Bauder v. State, 921
S.W.2d 696, 698 (Tex. Crim. App. 1996)). Further we have held that an
instruction to the jury to disregard will normally cure any prejudicial effect
of an argument. Barnes v. State,
70 S.W.3d 294, 309 (Tex. App.--Fort Worth 2002, pet. ref'd) (citing Borjan
v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). In the present case,
the trial judge's prompt instruction to disregard the comment effectively cured
any harm. We overrule Appellant's seventh point on appeal.
In Appellant's eighth point on appeal, he
claims that the prosecutor misstated the evidence and that the trial court erred
in refusing to grant a mistrial. The comment occurred during the punishment
phase of the trial. Appellant had testified that "When I met [AL's] mother
in 1989 it was a package deal. When I married Jennifer I married AL, too. I
loved her with all of my heart. I raised her as my own child." The State
claims in its brief that the prosecutor's closing argument in punishment was a
reasonable inference of this testimony. The State asserts that Appellant's
testimony showed that Appellant thought of and treated AL as a second wife.
"Counsel is given wide latitude in
drawing inferences from the evidence so long as the inferences drawn are
reasonable, fair, legitimate, and offered in good faith." Geuder
v. State, 76 S.W.3d 133, 138 (Tex. App.--Houston [14th Dist.] 2002, no
pet.) (citing to Gaddis v. State,
753 S.W.2d 396, 398 (Tex. Crim. App. 1988)); Stewart
v. State, 995 S.W.2d 187,190 (Tex. App.--Fort Worth 1999, pet. ref'd). We
cannot agree with the State that Appellant's testimony shows that he thought of
AL as a second wife. The final sentence of the quoted passage shows that
Appellant meant that he accepted AL as his own daughter and did not see her as a
step-daughter. The trial court properly sustained Appellant's objection and
properly gave an instruction to disregard to the jury. We must now determine if
a mistrial was warranted in this case.
While we agree with Appellant that the
trial court properly sustained his objection, we do not agree that the
instruction to disregard was ineffective and that the trial court should have
granted a mistrial. Appellant's testimony was fresh in the jury's mind, and so
the misstatement had less of an impact. Further, the trial court's prompt
instruction to disregard the comment effectively cured any prejudicial effect to
the jury. Barnes, 70 S.W.3d
at 309. We overrule Appellant's eighth point on appeal.
APPELLANT'S
POINTS NINE AND TEN
In Appellant's points nine and ten, he
claims that the trial court erred in permitting the prosecutor to make an
argument that struck at Appellant over the shoulder of counsel, and an argument
that permitted the prosecutor to state her personal opinion during punishment
argument. Both points center around the State's closing argument. The prosecutor
stated, "So there is a lot of considerations when you are deciding
punishment and I take offense to the fact that Mr. Barnett is characterizing
this as something less than the wors[t] possible crime." At this point
Appellant objected to the argument stating that it struck at Appellant over the
shoulder of counsel. When the trial court overruled the objection, Appellant
lodged another objection stating that the prosecutor impermissibly stated her
personal opinion during punishment argument. The trial court again overruled the
objection.
Discussion
Appellant claims that the prosecutor's
comment in closing argument during the punishment phase of the trial struck
Appellant over the shoulder of counsel. The Texas Court of Criminal Appeals has
held that prosecutors' arguments which attack defense counsel are manifestly
improper because they serve to inflame the minds of the jury to the accused's
prejudice. Lewis v. State,
529 S.W.2d 533, 534 (Tex. Crim. App. 1975); McMurrough
v. State, 995 S.W.2d 944, 947 (Tex. App.--Fort Worth 1999, no pet.).
In the present case, the argument which
Appellant complains of was not derogatory in nature. The prosecution rebutted
Appellant's attempt to characterize the sexual assault as minor and that he
deserved a reduced sentence. The prosecution did not claim that Appellant's
counsel was immoral or not behaving properly. The prosecution merely expressed
disagreement with Appellant's counsel's stated view of the case. We hold that
the prosecution did not strike at Appellant over the shoulder of counsel and the
trial court committed no error in overruling Appellant's first objection We
overrule Appellant's ninth point on appeal.
In Appellant's final point, he claims
that the prosecution interjected a personal opinion into closing argument, and
the trial court committed error by overruling Appellant's objection. We have
held that it is improper for a prosecutor to inject personal opinion in
statements to the jury. Maupin v.
State, 930 S.W.2d 267, 269 (Tex. App.--Fort Worth 1996, pet. ref'd).
"In evaluating whether the prosecutor interjected his personal opinion into
the argument, we must consider the challenged remark in the context in which it
appears." Jackson v. State,
17 S.W.3d 664, 675 (Tex. Crim. App. 2000). Further, "[w]hen phraseology
that sounds like personal opinion ... is, either overtly or inferentially,
combined with special expertise, it is that
combination that is prohibited." Maupin,
930 S.W.2d at 270 (emphasis in original).
In the present case, the prosecution was
summing up the evidence of the crimes. The prosecutor described a string of
sexual assaults that occurred for over four years in which the victim of the
crime testified that she could not remember when the assaults did not happen.
Over the four to five-year period that the assaults occurred, Appellant forced
AL to perform oral sex on him numerous times, and attempted to penetrate AL's
sex organ at least twice with his sex organ. Appellant also threatened to harm
AL and her mom if she ever told anyone of the assaults.
AL testified about the astronomical
impact of the assaults on her life. She stated that she had nightmares about the
abuse, that a day rarely went by when she did not think about the abuse, and
that she did not believe that she would ever have children because she feared
that something similar might happen to them. The prosecutor attempted to sum up
this evidence by stating that a major crime had occurred despite Appellant's
attempt to classify the crime as minor. She further attempted to convince the
jury to not give Appellant probation for the crime. Most importantly, the
prosecutor did not infer that she had any special expertise that she based her
opinion on. Id. We hold that
the prosecutor attempted to give a summation of the reasons for giving Appellant
a long sentence, and the personal comment made was based on the evidence at
trial and not the prosecutor's special expertise. We overrule Appellant's tenth
point on appeal.
CONCLUSION
Having overruled all of Appellant's
points on appeal, we affirm the trial court's judgment.
 
      
       
       
       
       
       
       
       
       
 SAM
J. DAY
      
       
       
       
       
       
       
       
       
 JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and LIVINGSTON,
JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[DELIVERED: MARCH 20, 2003]